IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HILDA L. SOLIS,
Secretary of Labor, United States
Department of Labor

      Plaintiff,                  No. CIV S-12-0276 GEB CKD

      vs.

INNOVATIVE STEEL SYSTEMS, INC.
et al.,
                                        FINDINGS AND RECOMMENDATIONS

      Defendants.
_____/

Presently pending before the court is plaintiff's motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2).[1] (Dkt. No. 8.) Upon review of the papers in support of the motion, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

BACKGROUND

The background facts are taken from the operative complaint unless otherwise noted. Defendant Innovative Steel Systems, Inc. ("Innovative Steel") was a California corporation originally incorporated on April 8, 1994 and engaged in the manufacture and installation of metal framing components for the building industry, with its principal place of business in Lathrop, California. (See Complaint, Dkt. No. 1 ["Compl."] ¶¶ 4-5.) Innovative

---

[1] This action is before the undersigned pursuant to E.D. Cal. L.R. 302(c)(19) and 28 U.S.C. § 636(b)(1).

1

Steel ceased operating sometime in 2003, and its powers, rights, and privileges were suspended by the California Secretary of State on December 3, 2003, and by the California Franchise Tax Board on May 1, 2007.  (Compl. ¶¶ 9, 11.)

Defendant Innovative Steel Systems, Inc. 401(k) plan ("Plan") is an employee pension benefit plan as defined under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3) sponsored by defendant Innovative Steel.  (Compl. ¶¶ 3-4.)  The Plan was funded solely through employee contributions and discretionary employer contributions.  (Compl. ¶ 13.)  Pursuant to the Plan's governing documents, Innovative Steel was the Plan Administrator and Named Fiduciary of the Plan.  (Compl. ¶ 7.)  Invesco, Ltd. ("Invesco") is the Plan's custodial trustee and can act only at the direction of the Plan Administrator or a properly appointed discretionary Trustee.  (Compl. ¶ 8.)  As of February 24, 2011, the Plan had 15 participants and $38,934.13 in assets.  (Compl. ¶ 13.)

Plaintiff in this action is Hilda Solis, Secretary of Labor for the United States Department of Labor.  Plaintiff alleges that prior to and at the time of Innovative Steel's cessation of operations, Innovative Steel failed to take sufficient steps to provide for the prudent and complete termination of the Plan, thereby essentially abandoning the Plan.  (Compl. ¶ 10.)  Currently, Invesco, as the custodial trustee, refuses to authorize distribution of the remaining Plan assets to the Plan's participants and beneficiaries without direction from a properly-appointed fiduciary or a court-appointed independent fiduciary.  (Compl. ¶ 12.)  As such, the participants are unable to access their account balances to reinvest them before retirement or draw from them upon retirement.  (Compl. ¶ 15.)  Plaintiff alleges several violations of ERISA, discussed further below.  (Compl. ¶¶ 14-15.)

////
////
////
////

Based on the above-mentioned facts, on February 2, 2012, plaintiff filed the instant action against Innovative Steel and the Plan[2] to enjoin acts or practices that violate the provisions of Title I of ERISA, and to obtain other appropriate equitable relief to redress violations and enforce the provisions of Title I of ERISA pursuant to 29 U.S.C. § 1132(a)(5). (Dkt. No. 1.)[3] Plaintiff seeks removal of Innovative Steel from its position as Plan Administrator and named fiduciary of the Plan; appointment of an independent fiduciary with discretionary authority to administer the Plan to effectuate its termination and distribution of the Plan assets to the participants and beneficiaries; as well as any other just and equitable relief. (Id.)

Proofs of service filed with the court demonstrate that defendants were properly served with process on March 2, 2012 pursuant to Fed. R. Civ. P. 4(h)(1)(A), Fed. R. Civ. P. 4(e)(1) and Cal. Civ. Proc. Code §§ 416.20 and 416.90.[4] (Dkt. Nos. 4, 5.) On March 2, 2012, plaintiff served the process papers on Suen Fang, Assistant to Dong Won Sohn, who was duly authorized to accept service of process on behalf of Mr. Sohn. In turn, because Mr. Sohn was the President, CEO, and COO of Innovative Steel, he is for practical purposes a trustee of the now-defunct Innovative Steel and authorized to accept service on its behalf. Mr. Sohn is also listed as the Trustee of the Plan in the Plan Adoption Agreement, and section 8.14 of the Plan's Trust Agreement provides that the Trust and any Plan adopting it may be served with legal process by service upon any Trustee. Therefore, Mr. Sohn was also authorized to accept service on behalf

---

[2] Plaintiff asserts that the Plan was named pursuant to Fed. R. Civ. P. 19 solely to ensure that the court can grant complete relief.

[3] This court has subject matter jurisdiction over the action pursuant to 29 U.S.C. § 1132(e)(1).

[4] Cal. Civ. Proc. Code § 416.20 provides, in part, that "[a] summons may be served on a corporation that has forfeited its charter or right to do business, or has dissolved, by delivering a copy of the summons and of the complaint: (a) To a person who is a trustee of the corporation and of its stockholders or members;...." Cal. Civ. Proc. Code § 416.90 states that "[a] summons may be served on a person not otherwise specified in this article by delivering a copy of the summons and of the complaint to such person *or to a person authorized by him to receive service of process*."

of the Plan.[5]

When defendants failed to respond to the complaint within the required time, plaintiff filed a request for entry of default on March 27, 2012. (Dkt. No. 6.) The next day, on March 28, 2012, the clerk entered defendants' default. (Dkt. No. 7.) Subsequently, on April 4, 2012, plaintiff filed the instant motion for default judgment against defendants. (Dkt. No. 8.) The motion seeks a default judgment awarding primarily injunctive relief. No response to the motion has been filed.

DISCUSSION

Pursuant to Fed. R. Civ. P. 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans., 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily

---

[5] The process server actually suggested that service was effectuated via substituted service. However, that cannot be the case, because there is no indication of follow-up service by first class mail as required by Cal. Civ. Proc. Code § 415.20. Moreover, if substituted service is utilized, service is only deemed complete on the 10th day after the mailing. Instead, it appears that service was proper under Cal. Civ. Proc. Code §§ 416.20 and 416.90, as noted above.

4

disfavored.  Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's default conclusively establishes that party's liability, although it does not establish the amount of damages.  Geddes, 559 F.2d at 560.

      A.      Appropriateness of the Entry of Default Judgment Under the *Eitel* Factors

          1.  Factor One: Possibility of Prejudice to Plaintiff

The first factor set forth by the Ninth Circuit in Eitel considers whether the plaintiff would suffer prejudice if default judgment is not entered, and whether such potential prejudice to the plaintiff militates in favor of granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would face prejudice if the court did not enter a default judgment because plaintiff would be without another recourse to enjoin the challenged conduct and enforce compliance with ERISA.  Moreover, the Plan participants and beneficiaries would continue to be unable to access their account balances in the Plan.  Accordingly, the first Eitel factor favors the entry of default judgment.

\\\

### 2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The court considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries. In particular, the court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

29 U.S.C. § 1132 provides, in part, that "[a] civil action may be brought...(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter;...." 29 U.S.C. § 1132(a)(5).

In the complaint, plaintiff alleges the following violations of ERISA:
(a) the Plan does not have named fiduciaries or trustees with exclusive authority and discretion to manage and control its assets as required by 29 U.S.C. §§ 1102(a) & 1103(a), and there is no person other than this court with the authority to appoint a new discretionary trustee or plan administrator;
(b) Innovative Steel, acting in its fiduciary capacity, failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Plan administration in violation of 29 U.S.C. § 1104(a)(1)(A);
(c) Innovative Steel, acting in its fiduciary capacity, failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims as required by 29 U.S.C. § 1104(a)(1)(B); and
(d) Innovative Steel, acting in its fiduciary capacity, failed to act in accordance with the documents and instruments governing the Plan as required by 29 U.S.C. § 1104(a)(1)(D).

1  (Compl. ¶ 14.)

2      Plaintiff's factual allegations, taken as true, show that Innovative Steel essentially abandoned its responsibilities as fiduciary to the Plan and failed to take the necessary steps to terminate the Plan and distribute the assets, or appoint a new fiduciary.  Currently, the Plan has no fiduciary, and the participants and beneficiaries are unable to reinvest or draw on their portions of the assets.  Therefore, the court finds that the allegations in the complaint are sufficient to state a claim, and that injunctive relief pursuant to 29 U.S.C. § 1132(a)(5) is appropriate.  Accordingly, the second and third Eitel factors favor the entry of default judgment.

### Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176.  In its motion for default judgment, plaintiff is not seeking monetary damages, but primarily injunctive relief.  The only sum of money involved, other than the assets of the Plan itself, is plaintiff's request that any independent fiduciary appointed by the court be authorized to receive $1,500 in reasonable fees and expenses, payable from the assets of the Plan.  (See Dkt. No. 8-2 at 3.)  It does not appear that any amount of money is even sought from Innovative Steel. Accordingly, this factor favors granting default judgment.

### Factor Five: The Possibility of a Dispute Concerning Material Facts

The fifth factor under Eitel "considers the possibility of dispute as to any material facts in the case." PepsiCo, Inc., 238 F. Supp. 2d at 1177.  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Televideo Systems, Inc., 826 F.2d at 917-18.  Moreover, as outlined above, plaintiff has provided the court with well-pleaded allegations supporting its claims. Accordingly, no genuine dispute of material facts would preclude granting the motion.

\\\

\\\

<u>Factor Six: Whether the Default Was Due to Excusable Neglect</u>

Upon review of the record, the court finds that the default was not the result of excusable neglect. See <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177. Defendants were properly served with process. The declaration submitted by Reed B. Drew, an investigator for the United States Department of Labor, Employee Benefits Security Administration, also indicates that Mr. Sohn had contact with Mr. Drew regarding the plaintiff's concerns with the Plan and was aware of the related investigation. (Dkt. No. 8-1 at 2-3.) Thus, the record suggests that defendants have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this <u>Eitel</u> factor favors the entry of a default judgment.

<u>Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472. "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive." <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177. Defendants' failure to answer the complaint precludes a decision on the merits. Although the undersigned is cognizant of the policy in favor of decisions on the merits, and consistent with existing policy would prefer that this case be resolved on the merits, that policy does not, by itself, preclude entry of default judgment. <u>Id.</u>

Upon consideration of the <u>Eitel</u> factors, the court finds that plaintiff is entitled to the entry of default judgment against defendants and will make a recommendation to that effect.

B.   Terms of the Judgment to be Entered

In its motion for default judgment, plaintiff requests primarily injunctive relief against defendants, including removal of Innovative Steel from its position as Plan Administrator and named fiduciary of the Plan and appointment of an independent fiduciary with discretionary authority to administer the Plan to effectuate its termination and distribution of the Plan assets to the participants and beneficiaries. The relief sought was requested in the complaint. (Compl. at

4.) Moreover, the court finds that the injunctive relief proposed by plaintiff is appropriate pursuant to 29 U.S.C. § 1132(a)(5) and 29 U.S.C. § 1109(a),[6] and because Innovative Steel's essential abandonment of the Plan has caused and will continue to cause irreparable harm.

Furthermore, the court finds it appropriate to appoint GTrust Financial Partners from Topeka, Kansas as the Independent Fiduciary of the Plan. The declaration submitted by Reed B. Drew, an investigator for the United States Department of Labor, Employee Benefits Security Administration, states that Mr. Drew consulted with several prospective independent fiduciaries regarding the process of terminating the Plan and attendant costs, and received fee proposals from these prospective fiduciaries. (Dkt. No. 8-1, ¶ 7.) After reviewing and comparing the fee proposals, combined with his knowledge of other independent fiduciaries appointed to do similar work on ERISA-covered plans investigated by the Employee Benefits Security Administration's San Francisco Regional Office, Mr Drew concluded that the $1,500 fee proposal submitted by GTrust Financial Partners was reasonable and consistent with the market for the required work. (Dkt. No. 8-1, ¶ 8.)

Therefore, the court finds that plaintiff is entitled to injunctive relief along the terms proposed by plaintiff.

CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (dkt. no. 8) be granted.

2. Defendant Innovative Steel Systems, Inc. ("Innovative Steel") be removed as a fiduciary to the Innovative Steel Systems, Inc. 401(k) Plan ("Plan").

3. GTrust Financial Partners, 1129 SW Wanamaker Road, Topeka, Kansas 66604

---

[6] 29 U.S.C. § 1109(a) provides, in pertinent part, that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter...shall be subject to such other equitable or remedial relief as the court may deem appropriate, *including removal of such fiduciary*."

(Phone: (785) 273-9993) be appointed as the Independent Fiduciary of the Plan, and:

    (a)    the Independent Fiduciary be required to collect, marshal, pay out and administer all of the Plan's assets and take further action with respect to the Plan as appropriate, including terminating the Plan when all of its assets have been distributed to all eligible participants and beneficiaries;

    (b)    the Independent Fiduciary be required to exercise, pursuant to the procedures outlined in the Employee Benefits Security Administration's Field Assistance Bulletin 2004-02, reasonable care and diligence to identify and locate each Plan participant and beneficiary who is eligible to receive a distribution under the terms of the Plan;

    (c)    the Independent Fiduciary be conferred all the rights, duties, discretion, and responsibilities of a trustee, fiduciary, and Plan Administrator under ERISA and be ordered to file a final Internal Revenue Service Form 5500 for the Plan;

    (d)    the Independent Fiduciary be authorized to delegate or assign fiduciary duties as appropriate and allowed under law and be allowed to retain such assistance as it may require, including attorneys, accountants, actuaries, and other service providers;

    (e)    the Independent Fiduciary be authorized to receive $1,500 in reasonable fees and expenses, payable from the assets of the Plan;

    (f)    the Independent Fiduciary be given full access to all data, information, and calculations in the Plan's possession and under its control, including information and records maintained by the Plan's custodial trustee or service provider;

    (g)    the Independent Fiduciary be authorized to give instructions respecting the disposition of assets of the Plan;

    (h)    the Independent Fiduciary be required to comply with all applicable rules and laws; and

    (i)    the Independent Fiduciary not be held personally responsible for any claims against the Plan or related entities which existed, arose, matured or vested prior to the appointment of the Independent Fiduciary, or for any claims filed subsequent to final distribution by a Plan participant that the Independent Fiduciary did not identify prior to closing of the account;

4. Judgment be entered for plaintiff; and

5. The case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 27, 2012

                                       _____
                                       CAROLYN K. DELANEY
                                       UNITED STATES MAGISTRATE JUDGE

CKD/5
Innovative.276.default.fr.wpd